CHARLES BALLANCE, PLAINTIFF IN ERROR, *v.* ROBERT FORSYTH, LUCIEN DUMAIN, AND ANTHONY R. BOVIS.

On the 15th of May, 1820, Congress passed an act (3 Stat. at Large, 605,) for the benefit of the inhabitants of the village of Peoria, by which every person claiming a lot in the village, was to give notice to the register of the land-office, whose report was to be laid before Congress.

On the 3d of March, 1823, Congress passed another act, (3 Stat. at Large, 786,) granting to each of the French and Canadian inhabitants, and other settlers according to the report, the lot upon which they had settled; and directed the surveyor of the public lands to make a plat of the lots, for which patents were to be issued to the claimants.

This survey and plat were not made until April and May, 1837.

In November, 1837, a person who was not a settler, purchased at the land-office at private entry, the fractional quarter of land which included some of the above lots, and soon afterwards obtained a patent. Both the certificate and patent reserved the rights of the claimant under the acts of Congress above mentioned.

In 1845 and 1847, these claimants obtained patents.

They were entitled to recover in ejectment from the persons who held under the private entry and patent.

The title of the plaintiffs was not divested by a tax sale in 1843. The whole fractional quarter section was taxed and one acre off of the east side sold. This sale was irregular.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the District of Illinois.

It was an ejectment brought by Forsyth, Dumain, and Bovis, to recover two lots of ground, viz., Nos. 47 and 65, in the town of Peoria. The bills of exceptions extended over thirty-seven pages of the printed record, and included deeds and depositions and proceedings under a tax sale, &c. &c. It is, therefore, impossible to insert them. The following is a summary notice of the evidence offered on the trial by plaintiffs and defendant.

### *Plaintiff's Evidence.*

1. The act of Congress passed on the 15th of May, 1820, (3 Stat. at Large, 605.) It directed that every person who

claimed a lot in the village of Peoria, should give notice of his claim to the register of the land-office, whose report should be laid before Congress.

2. An act of Congress passed on. the 3d of March, 1823, (3 Stat. at Large, 786,) after the report of the register had been received. It granted to such of the French and Canadian inhabitants and other settlers in the village, as had settled there, prior to the 1st of January, 1813, the lot so settled upon and improved. The second section of the act required the surveyor of the public lands to cause a survey to be made of the several lots, and to designate on a plat thereof the lot confirmed and set apart to each claimant, and to forward the same to the Secretary of the Treasury, who should cause patents to be issued in favor of such claimants, as in other cases.

This survey and plat were. not made until April and May, 1837.

3. A patent to Boushier for lot No. 47, issued on the 27th of March, 1847.

4. A plat of the village.

5. A plat of lot No. 47.

6. Testimony taken under a commission relative to the settlement of the lots.

7. Deed to plaintiffs, 11th December, 1836.

8. Patent for lot No. 66, December 16, 1845.

9. Plat of lot No. 65.

10. Deed to plaintiffs, September 16, 1836.

11.
12. } Plats of an addition to the town.

13. An agreed statement of certain facts.

*Defendant's Evidence.*

1. A certificate from the register, showing, that on the 15th of November, 1837, John L. Bogardus entered and .purchased the south-east fractional quarter of section, No. 9, containing $23\frac{93}{100}$ acres. This included the lots in question.

2. Deed from Bogardus to Underhill of the whole south-east fractional quarter.

3. Two deeds from Underhill to Ballance, the plaintiff in error.

4. Proceedings relative to a tax sale. The taxes were assessed on the fractional quarter, and an "acre off east side" was sold to Ballance.

5. Deed under the sale from the sheriff conveying the land in dispute.

6. An award between Ballance, Bigelow, and Underhill, whereby the lots in dispute were assigned to Ballance.

7. Copies of certificates relative to Bogardus's preëmption.

8. Patent to Bogardus, January 5, 1838.

The plaintiffs then offered in evidence a copy of the certificate of entry which the register gave to Bogardus, and which contained the following reservation:

" Now therefore be it known, that, on presentation of this certificate to the Commissioner of the General Land-Office, the said John L. Bogardus shall be entitled to receive a patent for the lot above described, subject, however, to the right of any and all persons claiming under the act of Congress of 3d March, 1823, entitled ' An Act to confirm claims to lots in the village of Peoria, in the State of Illinois.'        SAMUEL LEECH,
                                                                    *Register.*"

The patent contained a similar reservation.

The above was all the material evidence given in the case. Each party saved the right on the argument of the cause to object to any of said evidence on the ground of the incompetency or effect of the evidence, but not to make merely formal objections, such as proof of authenticity of papers offered.

It was further agreed that the property in controversy was worth more than two thousand dollars; whereupon the court instructed the jury to bring in a verdict for the plaintiffs, as by law they were entitled to recover on the above facts. To all of which opinions of the court the defendant excepted, and prayed this, his bill of exceptions, be sealed, signed, and made of record, which is accordingly done, &c.

                                        NATH'L POPE. [SEAL.]

Upon this bill of exception, the case came up to this court.

It was argued by *Mr. Ballance,* for the plaintiff in error, and *Mr. Gamble,* for the defendants in error.

Mr. Justice McLEAN delivered the opinion of the court.

This cause is brought before us, from the District of Illinois, by a writ of error.

It is an action of ejectment to recover the possession of three lots, numbered 47, 65, and 68, in the town of Peoria, under the act of Congress of the 3d of March, 1823, entitled "An act to confirm certain claims to lots in the village of Peoria." The claim 47 contains twenty-seven thousand four hundred and forty-nine square feet and seven hundredths; surveyed and designated as covered by claim 47, in the south-east fractional quarter of fractional section nine, in township 8, north of range eight, and east of the fourth principal meridian, &c.

Lots 65 and 68 contain the same number of square feet, and, in fact, constitute but one lot, situated in the same fractional quarter section. Separate suits were brought for these lots, but, being consolidated, they are included in one. The defendant below pleaded not guilty.

At the trial exceptions were taken to the rulings of the court, which present the points of law to be decided.

The whole of the evidence was copied into the bill of exceptions, on which the court instructed the jury to find a verdict for the plaintiffs, as by law they were entitled to recover on the facts, to which instruction the defendant excepted.

The parties must have considered this case as a demurrer to the evidence, or as a special verdict. As there was evidence on both sides, some of which was conflicting, it could not be considered as strictly a demurrer to evidence. Nor was it strictly a special verdict, as the instruction was given before the jury found the facts.

From the whole of the evidence being set out in the bill of exceptions, we may suppose it to have been the intention of the parties to treat the facts as agreed or undisputed, in order that the law applicable to them might be pronounced by the court.

In sustaining the jurisdiction of this case, it is not to be considered as a precedent. It imposes a labor on the court which they are not bound to incur. But, as there seems to be not much difficulty in the facts, the court will decide the questions of law, as far as it shall be necessary to examine them.

By the act of the 15th of May, 1820, Congress provided that every person, or the legal representative of every person, who claims a lot or lots in the village of Peoria, shall, on or before the first day of October next, deliver to the register of the land-office, for the district of Edwardsville, a notice of his claim, and the register was required to examine the evidence in support of the same, and report to the Secretary of the Treasury such as in his opinion should be confirmed; and the secretary was required to lay the same before Congress for its determination.

On the 3d of March, 1823, an act was passed granting to each of the French and Canadian inhabitants, and other settlers in the village of Peoria, whose claims are ascertained in a report made by the register of the land-office at Edwardsville, in pursuance of the act of 1820, and who had settled a lot in the village prior to the 1st of January, 1813, &c., where the same shall not exceed two acres; and when the same shall exceed two acres, more than four acres shall not be confirmed. " Provided nothing in this act contained shall be so construed as to

affect the right, if any such there be, of any other person or persons to the said lots, or any part of them, derived from the United States or any other source whatever, or as a pledge on the part of the United States to make good any deficiency," &c.

And the surveyor of the public lands was required to survey the lots, designating those confirmed, which survey and plat were to be returned to the secretary, who was required to issue patents to the claimants. The surveys, it appears, were not executed for several years; but, at length, having been made and forwarded to Washington, a patent was issued to the legal representatives of Louis Le Boushier for lot No. 47, the 27th of March, 1847. The proviso in the act of 1823 was copied into the patent.

A plat was in evidence showing that lot No. 47 was situated in the south-east fractional quarter, section 9.

Testimony was introduced to show that this lot was inhabited by Le Boushier prior to 1813. On the 11th of December, 1836, Joseph Touchette and Madeline, his wife, who was the daughter of Le Boushier, and his only living child and heir, executed a deed to plaintiff for the above lot.

A patent was also read to Antoine Bourbonne, or to his legal representatives, dated the 16th of December, 1845, for lot 65, also covered by claim 68. By the recitals in this patent, it appeared that this claim had been presented to the register, at Edwardsville, and recommended by him for confirmation, on which the grant was issued under the act of 1823. A plat was introduced, showing the locality of this lot to be in the same fractional quarter section as No. 47, and also a description of its boundary.

A deed from Bourbonne to the plaintiffs was in evidence for the above lot, dated 16th September, 1836.

Charles Ballance was admitted to defend in the place of Lincoln, that suit having been consolidated with the one brought by the plaintiffs against Goudy for the other lot. Ballance admits himself to be in possession of lots No. 47 and 65 – 68, described in the declaration.

It was agreed that Ballance was in possession of that portion of said premises covered by lots one and two in block 51, more than seven years before the commencement of this suit, by actual residence with his family thereon, up to 1845, and from that time by his tenants; and that portion of said premises, north-west of Water Street, in Bigelow and Underhill's addition to Peoria, was possessed more than seven years by the inclosure and cultivation of the same as a garden.

It was agreed that J. L. Bogardus, in 1832, was in possession of the south-east fractional quarter of section 9, township 8,

north of range 8, east of the 4th principal meridian, and continued in possession until 1834, when Isaac Underhill went into possession under Bogardus, and that Ballance was in possession of the premises in dispute under title from Bogardus; neither of them resided on the premises, but had tenants.

On the 15th of November, 1837, Bogardus purchased the south-east fractional quarter of section No. 9. A deed for the same was made by Bogardus to Isaac Underhill, dated the 5th of August, 1834. On the 7th of July, 1841, Underhill and wife conveyed to Ballance, lots Nos. 8, 9, and 7, in block No. 34, and lots 5 and 6, in block No. 38, in the above addition to the town. And, on the 1st of February, 1842, Underhill and wife conveyed to Ballance lot No. 3, in block 51, in the above addition to the town.

A record and proceeding of the county commissioners of Peoria county, showing that a tax was laid upon real property in the county, for 1843, and that such tax was imposed on the south-west and south-east quarters of said section, and that, on a return of the collector, that the owner had no personal property in the county out of which the taxes could be made, a judgment was rendered against the land by the Circuit Court, under the statute of Illinois, and an order was issued to the sheriff, directing him to sell the delinquent land to such person as should pay the tax for the smallest quantity of the tract.

And the defendant offered to read a deed from the sheriff on said tax sale to Charles Ballance, covering a part of lot No. 65, which was objected to by the plaintiffs, and the court sustained the objection, on the ground that the sale was contrary to law, to which decision the defendant excepted.

As there appears to have been no specific exception taken, and as we have not the opinion of the court, except that the evidence was defective, and could not sustain the tax-title, we are left to conjecture as to the particular ground of the decision.

One acre of land was sold by the sheriff, " off of the east side of the south-west and south-east fractional quarters of section number nine," &c. In these two fractional quarters there appear to have been about one hundred and fifty acres. It is not said in what form the acre was to be surveyed. Certainty, in such a case, is necessary to make the sale valid, for on the form of the acre its value may chiefly depend. And there is nothing on the face of the deed or in the proceeding previous to the sale which supplies this defect.

It is singular that the land should be sold in the name of Ballance, and that he should become the purchaser; especially as he appears to have been in possession of the land as owner.

Although the right of Bourbonne to lot 65 was recognized by the government, by the act of Congress of 1823, yet, until the public surveyor marked the lines, its position and extent could not be ascertained. And it appears that this duty was neglected by the public surveyor for many years. The patent was not issued until in 1845, two years after the tax was assessed. And it is not perceived how the specific lot could be taxed when its boundaries were not known. It seems to have been included in the south-east fractional quarter section, but it was not taxable as a part of that tract. Both the entry and the patent of Bogardus for the fractional quarter section contained an exception of the rights of all persons claiming under the act of Congress of the 3d of March, 1823. So that the whole or any part of the lots claimed by the plaintiffs, which may have been included in either of the fractional quarter sections, both having the same exception, the claim to such lots was not affected by the patent. And, consequently, neither of the lots were liable to be sold for the taxes on the tracts which included them.

The court will not, unless fraud be shown, look behind the patents for the lots in controversy. That the patents cover the lots, as surveyed, seems not to be disputed. We cannot, therefore, in an action at law, inquire whether the lots, as originally claimed, are accurately described in the patents. The survey having been made by a public officer and sanctioned by the government, the legal title must be held to be in the patentee.

If the patent to Bogardus be of prior date, the reservation in the patent, and also in his entry was sufficient notice, that the title to those lots did not pass. And this exception is sufficiently shown by the acts of the government.

These lots were surveyed before the taxes were assessed for 1843; but the assessments were made on the fractional quarter section, without regard to the lots reserved. Such lots were neither assessed nor sold for the taxes due on them, and they were not liable for the taxes due on the quarter section.

That Ballance, being liable for the tax, should permit his own land to be sold, and purchase one of the lots, or a part of it, to pay the taxes on the larger tract would seem to require explanation. Had a stranger purchased at this sale a part of the quarter sections, from the irregularity of the procedure, it is not perceived how the tax-title could have been sustained. But, however this may be, we are clear that the sale of lot sixty-five, or a part of it, under the circumstances, is void, and, consequently, that the sheriff's deed on such sale was properly rejected. As the whole law of the case seemed to have been submitted to the court, the deed, if admitted as *primâ facie* evidence, could not have changed the result.

Doe *v.* Beebe et al.

The statute did not protect the possession of the defendant below. His patent excepted these lots; of course he had no title under it, for the lots excepted.

The judgment of the Circuit Court is affirmed with costs.

## Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Illinois, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, affirmed with costs.