## Joseph Manning, Appellee, v. Joseph Bonard, Appellant, *et al.*

Tax Sale: PURCHASE OF CERTIFICATE BY OWNER OF LAND: EFFECT ON
PRIOR MORTGAGE: NOTICE. The owner of land sold for taxes can not,
by taking an assignment to himself of the certificate of sale, and pro-
curing a treasurer's deed thereunder, obtain a title superior to the
lien of a mortgage executed by a former owner prior to said sale, but
as to such mortgagee, he will be regarded as a mere redemptioner of
the land by virtue of his former title, and his tax deed will be treated
as a nullity; and a subsequent purchaser from him, being charged by
the records of the county with notice of the facts, will likewise hold
the land subject to the lien of such mortgage.

*Appeal from Lyon District Court.*—Hon. George W. Wakefield, Judge,

### Friday, February 3, 1893.

Action in equity to recover the amount due upon certain promissory notes, and to foreclose a real estate mortgage given to secure their payment. There was a hearing upon the merits, and a decree in favor of the plaintiff. The defendant, Joseph Bonard, appealed.— *Affirmed.*

*E. C. Roach*, for appellant.

*E. G. Greenleaf*, for appellee.

Robinson, C. J.—On the nineteenth day of January, 1885, the defendant, Edward Robinson, made to James R. Leach two promissory notes for five hundred dollars each, and two interest coupons for forty dollars each. One of the principal notes was due on the nineteenth day of January, 1888, one of the coupons was due one year later; and the other principal and coupon notes were due on the nineteenth day of

January, 1890. To secure the payment of the notes, Robinson and his wife executed to Leach a mortgage upon the southwest quarter of section 5, in township 98 north, of range 44 west, which was then owned by Robinson. On the eighteenth day of January, 1890, Leach assigned the notes and mortgage to the plaintiff, and he seeks in this action to recover the amount due on the notes, and to foreclose the mortgage. On the seventh day of December, 1885, the land was sold by the treasurer of Lyon county to Miller & Thompson, for the delinquent taxes of the year 1884. On the fifteenth day of December, 1888, the certificate was assigned to defendant, A. Van Wagener, and on the thirteenth day of March, 1889, a treasurer's tax deed on the sale represented by the certificate was issued to him, and was recorded on the twenty-sixth day of the same month. On the twenty-ninth day of November, 1889, Van Wagenen and wife executed to the defendant, Joseph Bonard, a warranty deed for the land, and he asks that his title be quieted as against the plaintiff's mortgage. The district court granted to the plaintiff the relief demanded.

The only question to be determined is whether the tax deed to Van Wagenen was valid, as against the mortgage held by the plaintiff. The mortgage provides that the mortgagor shall pay all taxes which had been or should be levied upon the land. On the eighteenth day of April, 1888, Van Wagenen became the owner of Robinson's interest in the land, by virtue of a sheriff's deed, issued to him on that date. The sale under which it was issued was made to satisfy a decree in favor of F. M. Slagle & Co., and against Robinson and wife, foreclosing a mechanic's lien on the mortgaged premises. On the twenty-sixth day of May, 1888, a second sheriff's deed to the premises was issued to Van Wagenen, under a sale made to satisfy a judgment rendered against Robinson in favor of one McKugo.

At the time these sheriff's deeds were executed, Van Wagenen owned a decree foreclosing a mechanic's lien against Robinson in favor of Wilson, Ely & Son, rendered in November, 1886, which was a lien on the land in question. After receiving these deeds, Van Wagenen executed to Elizabeth McMillan a quitclaim deed for the premises, which was dated on the eleventh day of December, 1888. It appears that this deed was given to the mother of a business partner of Van Wagener, and that it was not recorded until the twentieth day of March, 1889. It is contended by the appellee that it was not delivered until about the time it was recorded, and that it was a device for defeating his mortgage; that Van Wagenen in fact owned the land, subject to incumbrances thereon, when the certificate of tax sale was assigned to him; and, therefore, that the assignment operated as a redemption from the tax sale; and that no title was conveyed by the tax deed. Mrs. McMillan testifies that she first knew the deed for the land was to be made to her about the first day of March, 1889; that she was present when it was made; and that she left it with her son. It is shown that the son was owing his mother about one thousand, five hundred dollars; that he and Van Wagenen together owned several tracts of real estate, including the one in controversy, the title to which had been taken in the name of Van Wagenen; and that it was agreed between them, in October or November, 1888, that the land in controversy should be conveyed to the mother, to pay the debt of her son. It is shown that the deed was not executed at that time. Neither the son, H. G. McMillan, nor Van Wagenen fixes the time when it was delivered. McMillan says it was not made for some time after the negotiations for it were concluded; that, after it was drawn, it remained in the office for some time before it was executed; that, after it was executed, it was delivered to him, and kept for several weeks,

when his mother came to the office, and the deed was explained to her, and left by her with him; that he intended to take it to the recorder's office to be recorded, but forgot to do so for some time. He does not fix the time when his mother went to the office and first saw the deed, but thinks it was not as late as the first of March, nor later than the first of February. Van Wagenen corroborates the testimony of the mother to some extent, by stating that it was his recollection that, when she came to the office, the deed had not been executed; that he either made it then or soon afterwards, or it might have been executed before, and delivered at that time.

It is not necessary to determine the exact date of the delivery. The evidence satisfies us that the arrangement with the mother was not completed, and the deed delivered to her, until several weeks after the certificate of tax sale was assigned to Van Wagenen, and that, for the purposes of this action, he must be regarded as the owner of the land, or as holding the legal title for himself and his partner at the time the assignment to him was made. We are therefore required to determine the effect of that assignment. The appellee contends that it operated as a redemption of the land from the tax sale; while the appellant insists that Van Wagenen was under no obligations to pay the taxes for which the land was sold; that it was not his duty to redeem from the sale; and that he had a right to regard the interest he acquired by virtue of the assignment of the certificate as separate and distinct from the title he obtained through the sheriff's deeds.

Neither Van Wagenen nor his assignors, Miller & Thompson, had any interest in the land when it was sold for taxes, and owed no duty to the state to pay those for which it was sold. When the certificate of sale was assigned by Miller & Thompson, they owned a judgment which was rendered in their favor, and

against Robinson, in May, 1887, for one hundred and
sixty dollars and forty-nine cents and costs; and it was
a part of the contract under which the assignment was
made that, in case the mortgage of the plaintiff was
defeated, the amount of that judgment was to be paid
to the assignors. Neither the ownership of that judg-
ment, nor the conditional agreement to pay it, created
any liability to pay taxes, or to redeem from tax sales.
But Van Wagenen owned the land when the certificate
was transferred to him, subject to the mortgage owned
by the plaintiff; and although he was under no per-
sonal obligations to protect that mortgage, nor to
redeem from the tax sale, yet he had no right to defeat
the mortgage by procuring title through the sale. As
owner of the land, and also as owner of the decree ren-
dered in favor of Wilson, Ely & Son, he had a right to
redeem from the sale. *Rice v. Nelson,* 27 Iowa, 151.
In *Porter v. Lafferty,* 33 Iowa, 254, the owners of land
mortgaged it with a warranty of title, and afterwards
sold it subject to the mortgage. It was held that their
vendees were under no obligation to pay taxes delin-
quent when they purchased, but that, as they had
undertaken to discharge the mortgage, they, in their
relation to the title, occupied the places of their grantors,
and could not defeat the interest of the mortgagee by
buying in a tax title based on a sale made for such
delinquent taxes. It was held in *Stears v. Hollenbeck,*
38 Iowa, 550, that a vendee of mortgaged premises,
whose deed was made subject to the mortgage and
unpaid taxes, could not defeat the mortgage by per-
mitting the land to go to sale for such taxes, and obtain-
ing thereunder a tax deed. The conclusion was based
upon the theory that it was the duty of the owner of
land to pay the taxes levied upon it. In *Fair v. Brown,*
40 Iowa, 210, it was held that the holder of a lien on
real estate can not defeat the lien of another by means
of a tax title. It was said that, although not bound to

pay the taxes, he had a right to do so, to protect his lien, and that he can not obtain that protection by pursuing a course which would deprive the other lienholder of his security, and leave the burden of paying the lien upon the debtor after depriving him of his property. The same doctrine was announced in *Garrettson v. Scofield*, 44 Iowa, 35. In *Cowdry v. Cuthbert*, 71 Iowa, 733, it was held that the vendee of real estate can not defeat the claim of his vendor for unpaid purchase money by purchasing a tax title based upon a sale for taxes which he was not bound to pay, although he had notified his vendor to pay the taxes before the deed was issued. In *Eck v. Swennumson*, 73 Iowa, 423, it was held that where the owner of a mortgage purchased the mortgaged land at tax sale, and thereafter assigned the decree of foreclosure, while he held the certificate of tax sale, neither the owner nor any one claiming under him, could acquire title under the certificate. See, also, *Frank v. Arnold*, 73 Iowa, 370; *Bowman v. Eckstien*, 46 Iowa, 583. The facts in *Curtis v. Smith*, 42 Iowa, 665, relied upon by the appellant, were that Smith had taken a quitclaim deed to the land involved in that case, which had not been effectual to convey title or interest, and for that reason he could not have redeemed the land from tax sale, and was not disqualified to obtain the title thereto by tax deed. Although the cases cited were not in all respects alike, yet we think each was governed to some extent by a rule of general application, which must control in this case. We conclude that the assignment of the certificate to Van Wagenen operated as a redemption from the tax sale, and that the tax deed was invalid.

When the appellant purchased the land the records of the county disclosed facts which should have apprised him of the defects in Van Wagenen's title and of the plaintiff's claims, and he has shown no ground for equitable relief. The decree of the district court is correct, and is AFFIRMED.