NATIONAL SURETY COMPANY, Appellee, v. W. WALKER, M. A. WALKER, and D. J. VAN LIEW, Appellants.

Mortgages: FORECLOSURE: PURCHASE OF TAX TITLE BY MORTGAGOR: VALIDITY OF SUCH TITLE. In this suit to foreclose a mortgage the holder of a tax title who was made defendant and claimed title to the mortgaged property under a tax deed, asked that his title be quieted against plaintiff and also against the mortgagors, who denied the validity of the mortgage. The judgment of foreclosure and sale was reversed on appeal and pending the appeal the property was sold for taxes, the plaintiff acquiring a tax title. *Held,* that it was plaintiff's duty to pay the taxes on the

property during the time the judgment of foreclosure remained unreversed, and that it could not acquire a tax title through a sale or by purchase of a tax sale certificate while insisting upon title under the foreclosure; that such transaction amounted to a payment of the taxes or a redemption from the tax sale and could not be made the basis of an independent title against the defendants, under the rule that one in possession of real property or whose duty it is to pay the taxes can not acquire a tax title which will defeat a conflicting claimant or lienholder.

**Same:** RESTITUTION OF PROPERTY: ACCOUNTING. It is also held that as the original tax title holder, who was made a defendant and answered claiming title under the tax deed and by cross-petition asked that his title be quieted against plaintiff and against his co-defendants, the mortgagors, was entitled to a restitution of the property, or in case this could not be done to a judgment for its value; and that plaintiff is entitled to reimbursement for the amount paid by it for the tax certificate, not exceeding the amount it would have been obliged to pay to redeem, and also to credit for taxes paid and the amount expended for repairs or improvement of the property including insurance, and is chargeable with the rents and profits.

McClain and Evans, JJ., dissenting.

*Appeal from O'Brien District Court.*—HON. WM. HUTCH-INSON, Judge.

MONDAY, MARCH 14, 1910.

ACTION originally brought to foreclose a mortgage. Judgment was finally entered quieting title in plaintiff to the premises covered by the mortgage as against a claim of defendants interposed by amended answer, asking that a tax title held by plaintiff on the property covered by the mortgage be canceled, and denying relief to defendants under a counterclaim for damages. From this judgment, defendants appeal. *Reversed* and *remanded.*

*Read & Read,* for appellants.

*Henry & Henry,* for appellee.

Deemer, C. J.—This action was originally instituted in 1902, to foreclose a mortgage on certain real estate in O'Brien county belonging to Mary A. Walker; the mortgages having been given by her and her husband, Warren Walker, to secure payment of their joint promissory note. Van Liew was made defendant as' the holder of an alleged tax title. In this action a decree of foreclosure was entered by the district court of O'Brien county in which any right or interest held by defendant Van Liew in the premises was found to be subject to plaintiff's right under its mortgage. There was an appeal from this judgment, and it was reversed. See *National Surety Co. v. Walker,* 127 *Iowa,* 518. In the meantime no supersedeas bond having been given, there had been a foreclosure sale of the property, and it had been bought in by plaintiff as execution creditor for $600, plaintiff satisfying the costs and giving the Walkers credit on the judgment against them for the balance, and a sheriff's deed had been issued to plaintiff. On a remand of the case to the lower court after reversal, Van Liew and the Walkers by amendment to' their answers asked judgment against plaintiff in the amount of $600 as improperly received by plaintiff under its foreclosure sale, and further charged that plaintiff and its attorneys· had conspired with other parties to wrong, cheat, and defraud defendants out of the mortgaged property, to the damage of defendants in a further 'sum. The plaintiff in reply confessed that it acquired no title under the sheriff's deed, but set up a title. to the premises under a tax deed, and defendants, by further answer, attacked this tax deed, alleging that plaintiff was estopped from claiming title to the property under such deed, and that the deed was obtained by fraud and collusion. The court entered a decree setting aside the sheriff's sale under the original decree, and declaring the sheriff's deed to be null and void, but further found that plaintiff was the absolute and unqualified owner of the property in question under

and by virtue of the tax deed, and quieted the title of plaintiff under such deed 'as against any claims of the defendants. Defendant Van Liew filed an answer in which, among other things, he claimed title to the mortgaged property under and by virtue of a tax deed, and by way of cross-petition asked that his title be quieted against the plaintiff and also against his codefendants, the Walkers.

Plaintiff's tax title was acquired through a sale for taxes made subsequent to the sale to Van Liew. Van Liew also joined with his codefendants in their claim for a restitution of the property and for damages.

1. MORTGAGES: foreclosure: purchase of tax title by mortgagor: validity of such title.

Upon the reversal of the original foreclosure case either the defendant Walker or Van Liew was entitled to a restitution of the property, with rents and profits secured by plaintiff, less taxes, improvements, etc., unless it be held, as contended for the surety company, that its tax title gave it a prior right and title to that held by either the Walkers or Van Liew. Code, section 4145; *Munson v. Plummer,* 58 Iowa, 736; *Zimmerman v. Bank,* 56 Iowa, 133; *Schoonover v. Osborne,* 117 Iowa, 427. The decree under which the foreclosure was had was adhered to and insisted upon down to the time of the reversal in this court, and was unquestionably valid until reversed by this court. Until reversal it was the duty of the surety company, which had acquired the legal title to the property in virtue of the sheriff's deed, to pay the taxes. The acquisition of the title through a tax sale or by the purchase of a certificate of tax sale from another was nothing more than the payment of the taxes or a redemption from the sale, and can not be made the basis of an independent title against either of the defendants. *Doud v. Blood,* 89 Iowa, 237; *Hunt v. Rowland,* 22 Iowa, 53.

In the former case it is said:

The defendants claim title to the land as against the

plaintiff's mortgage because of the tax deed to Adams. It is true that the said Emeline Campbell claims title under subsequent tax sales. But these sales and deeds were made at a time when she was under a legal obligation to pay the taxes, and can not be allowed to affect her title under the tax deed to Adams and the conveyances from Blood. There is enough in this case which requires consideration without elaborating the principle just stated, which is one of the elementary doctrines pertaining to tax titles. Without stating all of the facts, it is enough to say that the defendants, when they secured tax titles subsequent to acquiring the title under Adams and the quitclaims under Blood, were merely paying their own taxes . . . A certificate of purchase at tax sale in the hands of an assignee is chargeable with all the infirmities that would affect it in the possession of the original holder. *Besore v. Dosh,* 43 Iowa, 211. The original holders of these tax certificates had sold them to Blood, and this operated as a redemption of the land from the tax sale. *Bowman v. Eckstein,* 46 Iowa, 583; *Burns v. Byrne,* 45 Iowa, 285; *Hunt v. Seymour,* 76 Iowa, 751. The certificates were of no more avail in the way of conferring a right on Clarke or Adams to a tax deed than if they had been blank paper.

In the *Hunt* case, this court said:

As the vendee took possession, however, and enjoyed the rents and profits, the rule settled in *Miller v. Corey,* 15 Iowa, 166, would, as between him and his vendor, make him liable. Being thus liable, being bound upon legal and equitable principles, though not by express covenant, to keep down the incumbrances, he could not acquire a title against the vendor, by suffering the land to go to sale, and bidding it in for the taxes. Not only so, but as vendee he could not acquire a title adverse to his vendor by a purchase at tax sale. These rules are well settled, as will be seen by the following, among other cases: *Voris v. Thomas,* 12 Ill. 442; *Glancy v. Elliott,* 14 Ill. 456; *Willard v. Strong,* 14 Vt. 532 (39 Am. Dec. 240); *Blake v. Howe,* 1 Aikens (Vt.) 306 (15 Am. Dec. 681); *Douglas v. Dangerfield,* 10 Ohio, 152; *Ballance v. Forsyth,* 13 How. 18 (14 L. Ed. 32); Blackwell on Tax Titles, 470-2.

The land however in this case, was bought, not in the name of the vendee, nor by one under any covenant to keep down the incumbrances. And yet the testimony satisfies us that he combined with the vendee, or those in possession, to thus acquire the title and defeat that of the vendor; or, if not to defeat his title, to get it into his hands for the benefit of the family, rather than to let it be bought in by some stranger. . . . In view of his relation to the parties and the circumstances of the purchase, we could not, consistent with principle, allow the title to prevail. It is certain that plaintiff settled with Mrs. Hopkinson after the purchase, entered into possession and procured the rescission of the contract, with the belief that she had no further claim upon the land. It is worth very largely more than the tax incumbrance. It would be paying a premium for fraud to allow plaintiff's title to be thus divested..

The settled rule for this state is that one in possession of real estate or whose duty it is to pay the taxes can not acquire by tax deed a title which will defeat a conflicting claimant or lienholder. *Anson v. Anson,* 20 Iowa, 56; *Stears v. Hollenbeck,* 38 Iowa, 550; *Curtis v. Smith,* 42 Iowa, 665; *Seymour v. Harrison,* 85 Iowa, 130-133; *Hunt v. Rowland,* 22 Iowa, 53; *Thomas v. Stickle,* 32 Iowa, 71; *Manning v. Bonard,* 87 Iowa, 648; *Fair v. Brown,* 40 Iowa, 209; *Eck v. Swennumson,* 73 Iowa, 423; *Dayton v. Rice,* 47 Iowa, 429; *Lillie v. Case,* 54 Iowa, 177; *Cone v. Wood,* 108 Iowa, 260; *Busch v. Hall,* 119 Iowa, 279; *First Con. Church v. Terry,* 130 Iowa, 513.

In *Terry's* case, 130 Iowa, 513, it is said:

The rule that the life tenant of lands is charged with the duty of paying the taxes which accrue upon the property of which he is enjoying the use, rents and profits is elementary. *Olleman v. Kelgore,* 52 Iowa, 38; *Booth v. Booth,* 114 Iowa, 78; *Defreese v. Lake,* 109 Mich. 415 (67 N. W. 505, 32 L. R. A. 744, 63 Am. St. Rep. 584); *Trust Co. v. Mintzer,* 65 Minn. 124 (67 N. W. 657, 32 L. R. A. 756, 60 Am. St. Rep. 444). It is equally well

settled that with this duty resting upon him he can not cut out or destroy the estate of the remaindermen in the property by permitting it to be sold for taxes and taking to himself the title thus accruing.    Cooley on Taxation (2d Ed.) 467; *Crawford v. Meis,* 123 Iowa, 610.· This being true, it is immaterial whether he takes the tax title direct or by conveyance from some third person who has acquired it.    In neither case can he ·assert such title against the owners of the remainder, and his purchase will be held to operate as a mere redemption from the tax sale or payment of the taxes for which he was legally liable. Such would also be the necessary effect of a tax title taken by his procurement or for his use and benefit in the name of some other person.    .  .  .    It· is a general and just doctrine that a person having such an interest in land as would entitle him to redeem from tax sale can not, by taking a tax title, eliminate the rights of others jointly interested with him in such property.    *Lane v. Wright,* 121 Iowa, 376; *Cowdry v. Cuthbert,* 71 Iowa, 733; *Garrettson v. Scofield,* 44 Iowa, 37; *Manning v. Bonard,* 87 Iowa, 648.    That the wife has an interest in the homestead which she is entitled to protect by redeeming from tax sale, there can ·be no room for doubt.

In *Dayton's* case, 47 Iowa, it is said:

As between W. S. Rice, the mortgagor, and plaintiff, the mortgagee, the primary duty of paying this tax rested upon the mortgagor.    He remained in possession of the property, and it was his duty to keep the taxes paid.    So long as the relation of mortgagor and mortgagee continued, this obligation rested upon the mortgagor.    It is true the mortgagee might have paid the taxes for the preservation of his security; but if he had done so his claim against the mortgagor would have been, to the extent of the payment, increased.    The duty of paying the taxes thus resting upon the mortgagor, he could not set up a title having its origin in a failure to perform this duty, as ·against the mortgagee.    (See *Porter v. Lafferty,* 33 Iowa, 254.)    But it is claimed that the relations  of these parties are entirely changed by the fact that the lands had been sold for taxes when the sheriff's sale under which plaintiff claims was made.    The tax sale was made in October, 1871, and the treasurer's

deed was executed in October, 1874. The sheriff's sale was made subject to redemption on the 2d day of May, 1874. Plaintiff was not entitled to a sheriff's deed until the 2d day of May, 1875. The mortgagor still retained the right to possession, and the right to redeem from the sheriff's sale, and this right continued until six months after the Patrick deed was executed. During all this time the primary obligation of paying these taxes rested on W. S. Rice. If plaintiff had redeemed for the purpose of preserving his security, Rice might have redeemed from plaintiff at any time before he was entitled to a sheriff's deed, by paying the original debt, with the taxes added. When, therefore, the property was purchased at the sheriff's sale, plaintiff had a right to suppose that Rice would remove the incumbrance growing out of unpaid taxes, as it was his duty to do. The purchasing in of the outstanding tax title from Patrick by Rice, whilst his right to redeem from the sheriff's sale existed, should be regarded in equity as a mere discharge of his obligation to redeem from the tax sale. We feel quite well satisfied that he ought not to be permitted to set up the title thus acquired in opposition to the title acquired by plaintiff through the foreclosure of his mortgage, and the purchase at the sheriff's sale thereunder.

In *Fair's* case, 40 Iowa, 209, it is said:

The question presented for our determination is this: May one incumbrancer defeat the lien of another by acquiring a tax title upon the land bound by the lien of each? A mortgagor, or one claiming title under him, can not defeat the lien of the mortgagee by acquiring a tax title upon the land. *Porter v. Lafferty*, 33 Iowa, 254; *Stears, Administrator, v. Hollenbeck*, 38 Iowa, 550. The rule, in these cases, is based upon the obligation of the mortgagor, or the party claiming under him, to pay the taxes; therefore the act of the party acquiring title through his own default is held to be fraudulent. In the case before us no such obligation rested upon defendant, for he was simply a lienholder, and was bound neither by the law nor contract to pay the taxes which were the foundation of his tax title. But in another view his act is fraudulent against the plaintiff and the mortgagor. The land is a common

fund for the payment of plaintiff's mortgage and defendant's liens. Defendant was authorized to redeem from the tax sale. *Rice v. Nelson,* 27 Iowa, 148. Equity will not permit him to acquire the title for an inconsiderable sum when he was authorized to remove the trifling incumbrance by redemption. Though not bound to pay the tax, yet it was his right to do so to protect his own liens. He can not obtain that protection by pursuing a course that will deprive the mortgagee of his security and leave the mortgagor to sustain the weight of the liens, which are personal judgments, after being deprived of his property by tax title. Equity will relieve against such oppression, and teach the grasping creditor moderation in his demands, and that he can not destroy others to build up his own fortunes.

In *Eck v. Swennumson,* 73 Iowa, 423, the court said:

It will be observed that S. Swennumson was the owner of the mortgage when he bid in the premises at tax sale, and that he still held the certificates of purchase when he assigned the judgment of foreclosure to plaintiff. One of the grounds upon which plaintiff demands relief against the tax deed is that, as Swennumson had the right to pay the taxes for the protection of his security, his purchase at the tax sale should be regarded merely as a payment of them, made for that purpose, and consequently neither he, nor any person holding under him, could acquire title under the certificates; and we think this position should be sustained. It was held in *Fair v. Brown,* 40 Iowa, 209, and *Garrettson v. Scofield,* 44 Iowa, 35, that a junior mortgagee can not, by bidding the property in at tax sale, acquire title, and thereby defeat the senior mortgage; and in the former case it is said that he can not by that means acquire title as against the mortgagor. The ground of the holding is that, as the party had the right to pay the taxes for the protection of his security, it would be inequitable to permit him to acquire title by purchasing the property for the delinquent taxes, and thereby defeat the lien of the senior mortgage, and cast upon the mortgagor the weight of both his own and the senior lien. Plaintiff's equities are equally as strong as would be those in favor of a senior mortgagee or the mortgagor. He in fact stands

in the place of the latter, for by his purchase under the foreclosure he acquired all his estate and rights in the land.

*Cone v. Wood,* 108 Iowa, 260, extends the rule here announced. Further quotation from the authorities is unnecessary. From the quotations already made it is apparent that so long as plaintiff claimed under its mortgage, or in virtue of the foreclosure sale of the property, it had the right and it was its duty to pay the taxes and it could not, while insisting upon its mortgage or a title acquired thereunder, obtain a tax title either against the mortgagors or any other holder of a title or lien upon the property. Had plaintiff waived its mortgage or done any other act showing an abandonment thereof before acquiring the tax title, another rule might perhaps obtain, as in *Curtis v. Smith, supra;* but at the time it acquired its tax title it was insisting both in the lower court and here that its mortgage and the sale under the foreclosure decree were valid. In such circumstances it could not acquire a tax title. In *Garrettson v. Scofield,* 44 Iowa, 35, it is said:

The defendant, Scofield, and the plaintiff were both mortgagees, and both claiming interests in the land to the extent of their respective mortgages, and while it is true there was no absolute duty resting upon either to pay the taxes, yet they had such an interest in the land as to make it necessary to do so in order to properly protect the title. Under these circumstances we do not believe that payment of the taxes by either at tax sale should entitle him to the statute penalties. See *Fair v. Brown,* 40 Iowa, 209. Scofield having taken the junior mortgage for a large amount, such as we are bound to believe, from subsequent events, it was not expected Whitstine or his grantee would pay; his relation to the plaintiff in this case is more in the nature of a subsequent purchaser from Whitstine than that of a stranger purchasing at tax sale. At least both were the holders of liens and the payment of taxes was necessary to protect the title.

It may be that the Walkers lost their title through

the tax deed to Van Liew; but Van Liew is in the case setting up his tax deed and joining with the Walkers in the relief asked. He at least is entitled to restitution and an accounting. It must be remembered in this connection that plaintiff obtained its tax deed on April 28, 1903, while the case was pending in this court on appeal and at a time when there was a decree in its favor holding its mortgage good and superior to any claims on the part of defendant Van Liew, and a decree ordering the property sold to pay the judgment upon the mortgage. The property was sold at foreclosure sale December 20, 1902, and the sheriff's deed was executed one year thereafter. If Van Liew were not in the case, and the Walkers were alone making defense, it may be that they should not be heard for the reason that they had lost their title through the tax sale to Van Liew. But as he is here insisting upon his title he is entitled to protection. Plaintiff relies upon an alleged adjudication of the matter at issue in an action between the parties in the district court of Polk county. There is no proper proof of any such judgment or decree as determines the issues in the case. Appellees further claim that Van Liew has never made any attack upon their tax title, and that if he had done so he is in no position to question it because he did not show title at the time of the sale under which plaintiff claims, or that the taxes due upon the property have been paid as required by section 1445. It is to be observed, however, that Van Liew was made a party defendant to both the original foreclosure proceedings and to the amended petition filed after the remand to the district court. In that amended petition plaintiff was claiming under a tax title and was asking that Van Liew's title under a prior tax deed be held for naught. Van Liew set up his tax title in defense and asked a restitution of the property sold under a decree which had been reversed. Having been made a defendant, and showing a

2. SAME: restitution of property: accounting.

tax deed for the property prior to that asserted by the plaintiff, Van Liew was not required to do more than show the invalidity of plaintiff's tax deed. In *Adams v. Burdick,* 68 Iowa, 666, it is said: "A defendant who has a right to demand from plaintiff the payment of taxes which it claimed are unpaid must raise the objection that it does not appear that all the taxes due upon the property have been paid, by demurrer, or such objection will be deemed waived." No demurrer was filed to Van Liew's answer and cross-petition, raising the question now presented. Moreover, it sufficiently appears that all taxes were paid when defendant Van Liew filed his answer and counterclaim. This was sufficient in any event. *Lynn v. Morse,* 76 Iowa, 665.

Lastly it is claimed that defendant Van Liew does not tender an issue as to the validity of plaintiff's tax deed. We think this issue was tendered by a motion to strike, by an answer to plaintiff's amended petition and by a demurrer to plaintiff's reply to this answer. The results of these findings are that plaintiff's tax deed is declared invalid, that defendant Van Liew is entitled to a restitution of the property sold at foreclosure sale, or if that can not be had then a judgment for the value thereof, that plaintiff is entitled to reimbursement for the amount paid out for the assignment of the tax certificate, provided this amounts to no more than it would have been obliged to pay had it duly redeemed. Plaintiff is also entitled to credit for the amount expended to repair or for improvements upon the property, including insurance, if any, paid, and it should be charged with all the rents and profits thereof. The testimony is not sufficiently definite for us to make the computation, and the case will be remanded for such an accounting and for a final decree in harmony with this opinion. *Reversed* and *remanded.*

McCLAIN, J. (dissenting).—The controlling ultimate

facts, as it seems to me, are these: The note and mortgage on which suit was originally brought by plaintiff against Warren Walker were wholly invalid when plaintiff took them by assignment; and therefore plaintiff never had any lien upon nor interest in the property in controversy. *National Surety Co. v. Walker,* 127 Iowa, 518. Van Liew, who was made defendant because he held a tax deed on the property, was so holding adverse to plaintiff and to Walker, for a tax title is in its nature original and not derivative. *Lucas v. Purdy,* 142 Iowa, 359. Whatever reason there may have been for asserting that Van Liew's claim was inferior to the assumed lien of plaintiff was shown not to exist when it was decided that the mortgage held by plaintiff was invalid. So far as the record shows, Van Liew's tax title was in its inception, and continues to be a hostile title as against plaintiff and also as against Walker and those claiming under him. Why it should be assumed in the majority opinion that Van Liew became entitled to restitution from plaintiff when the execution sale in the foreclosure proceeding was set aside, I am unable to understand. Van Liew's tax title, if any he had was still good; and it does not appear that he became subrogated to or acquired in any other way the right of Walker to restitution from plaintiff. How then can it be that, as the majority holds, Van Liew is entitled to restitution from plaintiff?

When plaintiff acquired its tax title Van Liew's tax title was outstanding, and hostile. Can it be true that one who claims title to or a lien upon property which has been bought in by a stranger to the title at tax sale can not, at a subsequent tax sale, acquire a new and independent tax title? None of the cases cited by the majority announce any such doctrine. The holder of a tax title is not a lienholder, nor an owner in common. As to him the original owner or one claiming under the same chain of title as the owner owes no duty to pay the taxes. The

tax title holder and he alone, so far as his title is concerned, has the burden of protecting such title against subsequent sales for taxes. This proposition seems to me so elementary that citation of authorities ought to be unnecessary; but it is fully supported in principle by the following cases, which speak for themselves: *Curtis v. Smith*, 42 Iowa, 665; *Mallory v. French*, 44 Iowa, 133; *Neal v. Frazier*, 63 Iowa, 451; *Griffin v. Turner*, 75 Iowa, 250.

In my judgment Van Liew is entitled to no relief as against the tax title acquired by plaintiff.

EVANS, J., concurs in the dissent.